1  MARK E. MILLER ( S.B.#130200)
   DARIN W. SNYDER (S.B.#136003)
2  O'MELVENY & MYERS LLP
   Embarcadero Center West
3  275 Battery Street
   San Francisco, California  94111-3305
4  Telephone:   415.984.8700
   Facsimile:    415.984.8701
5
   Attorneys for Plaintiff
6  MICREL, INCORPORATED

7

8              **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10

11  MICREL, INCORPORATED, a               Case No.  C 04-04770 EMC
    California Corporation,
12                                         **FIRST AMENDED COMPLAINT FOR:**
                    Plaintiff,
13                                         **(1) PATENT INFRINGEMENT; AND**
         v.
14                                         **(2) MISAPPROPRIATION OF TRADE**
    MONOLITHIC POWER SYSTEMS,              **SECRETS; AND**
15  INC., a Delaware Corporation,
    MICHAEL R. HSING, and JAMES C.         **(3) COMMON LAW**
16  MOYER, and DOES 1-20, inclusive,       **MISAPPROPRIATION; AND**

17                  Defendant.             **(4) BREACH OF CONFIDENTIALITY**
                                           **AGREEMENT; AND**
18
                                           **(5) STATUTORY UNFAIR**
19                                         **COMPETITION (Cal. Bus. & Prof. Code**
                                           **§ 17200)**
20
                                           **DEMAND FOR JURY TRIAL**
21

22

23         Plaintiff Micrel, Incorporated ("Micrel") hereby states and alleges for its First

24  Amended Complaint as follows:

25                            **INTRODUCTION**

26         1.     Defendants have used Micrel's trade secrets and other confidential,

27  proprietary information as the basis for the formation of Monolithic Power Systems, Inc.

28

FIRST AMENDED COMPLAINT
CASE NO. C 04-04770 EMC

1    ("MPS") and to develop MPS's manufacturing processes and semiconductor devices.

2    Defendants Michael R. Hsing ("Hsing") and James C. Moyer ("Moyer") are former

3    Micrel employees.  Upon leaving Micrel, Hsing stated that he was returning to graduate

4    school, but founded MPS within weeks after leaving Micrel.  A short time later, Moyer

5    feigned retirement from Micrel.  Within weeks of "retiring," Moyer joined Hsing at MPS.

6    After founding MPS, Defendants used technology stolen from Micrel to avoid the need to

7    spend years and millions of dollars that Micrel incurred to develop the technology

8    necessary to design and manufacture high voltage analog semiconductor devices.

9    Compounding their misappropriation, Hsing and Moyer filed patent applications based on

10   inventions developed at and belonging to Micrel, and they then assigned such applications

11   to MPS.

12       2.      Micrel seeks to secure the return of all Micrel trade secrets and proprietary

13   materials in Defendants' possession and enjoin Defendants from obtaining any further

14   commercial advantage or unjust enrichment from their misappropriation of Micrel's trade

15   secret or proprietary information.  Micrel also seeks an accounting, a constructive trust,

16   compensatory and punitive damages, and Micrel's attorneys' fees and costs from

17   Defendants for their wrongful conduct.

18                                    **THE PARTIES**

19       3.      Plaintiff Micrel is a corporation organized under the laws of the state of

20   California, having an office and principal place of business at 1849 Fortune Drive, San

21   Jose, California 95131.

22       4.      Defendant MPS is a corporation formed under the laws of the state of

23   Delaware, having an office and principal place of business at 983 University Avenue,

24   Building A, Los Gatos, California 95032.

25       5.      On information and belief, Defendant Hsing is an individual residing in

26   Saratoga, California.

27       6.      Defendant Hsing is a founder of MPS and is MPS's Chief Executive Officer

28   (CEO) and President.

FIRST AMENDED COMPLAINT                              2
CASE NO. C 04-04770 EMC

7.     On information and belief, Defendant Moyer is an individual residing in San Jose, California.

8.     Defendant Moyer is MPS's Chief Design Engineer and is on the MPS Board of Directors.

9.     Micrel is unaware of the true names and capacities of the Defendants sued herein as DOES 1 through 20, and, therefore, sues these Defendants by such fictitious names pursuant to Cal. Code Civ. Proc. § 474.  Micrel will amend this Complaint to state the true names and capacities of such fictitiously named Defendants when ascertained. Micrel is informed and believes, and on that basis alleges, that each of such fictitiously named Defendants is in some manner connected with the matters alleged herein and is therefore liable to Micrel.

## JURISDICTION AND VENUE

10.     This action arises under the patent laws of the United States, Title 35 of the United States Code, including, but not limited to, 35 U.S.C. § 271, under California's Uniform Trade Secrets Act (Cal. Civ. Code § 3426), and under California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200-09).

11.     This court has original jurisdiction over the patent infringement claims under 28 U.S.C. §§ 1331 and 1338(a).

12.     This court has supplemental jurisdiction over the misappropriation of trade secrets claim and the other state and common law claims under 28 U.S.C. § 1367(a).

13.     Personal jurisdiction over Defendant MPS is proper on the basis that MPS has a principal place of business in the state of California.

14.     Personal jurisdiction over Defendant Hsing is proper on the basis that Hsing is domiciled in the state of California.

15.     Personal jurisdiction over Defendant Moyer is proper on the basis that Moyer is domiciled in the state of California.

16.     Venue is properly laid in this Court under 28 U.S.C. §§ 1391(b) and 1400(b).

1                              **INTRADISTRICT ASSIGNMENT**

2        17.    This is an Intellectual Property Action, and under the Court's Assignment

3 Plan assignment of this action to any division of the Court is proper pursuant to L.R. 3-

4 2(c).

5                                **GENERAL BACKGROUND**

6        18.    Micrel is a Silicon Valley high-technology company that develops,

7 manufactures, and sells analog, digital and mixed-signal integrated circuit devices for a

8 variety of industries. Micrel has developed a portfolio of world-class wafer fabrication

9 processes, and uses, singularly or in combination, complementary metal oxide

10 semiconductor (CMOS), bipolar, and double diffused metal oxide semiconductor

11 (DMOS) technologies in analog semiconductor devices. The broad range of products in

12 Micrel's portfolio include display drivers, high-performance analog products for power

13 management in systems ranging from miniature cell phones to industrial applications,

14 high bandwidth products for connecting and distributing high-speed data and clocks for

15 timing-critical applications, highly integrated radio frequency (RF) transmitter and

16 receiver integrated circuits, and fiber optic, system management, and bus device

17 integrated circuits. In addition, Micrel provides foundry services to commercial and

18 military integrated circuit designers and other designers.

19                **Hsing's Employment by and Agreements with Micrel**

20        19.    Micrel employed Hsing as a process development engineer from

21 approximately April 4, 1994 until August 15, 1997 when Hsing resigned his position at

22 Micrel to return to graduate school.

23        20.    In August 1997, within weeks of resigning from Micrel, Hsing founded

24 MPS. Hsing incorporated MPS in October 1997.

25        21.    As a process development engineer at Micrel, Hsing worked on developing

26 processes for manufacturing high voltage semiconductor devices.

27

28

FIRST AMENDED COMPLAINT                4
CASE NO. C 04-04770 EMC

22.     Hsing signed Micrel's Proprietary Invention and Confidential Information Agreement on or about April 4, 1994 ("Hsing Agreement") (a true and correct copy of the Hsing Agreement is attached as Exhibit 1 to this Amended Complaint).

23.     In the Hsing Agreement, Hsing agreed that he would "preserve as confidential and [would] not divulge…or use for any unauthorized purposes either during or after the term of employment, any trade secret, information, matter or thing, of confidential[,] private or secret nature, connected with the actual or anticipated products, research development or business of [Micrel] without written consent…until such time as [the] information otherwise becomes public knowledge."

24.     While employed at Micrel, Hsing co-invented a structure that is the subject of United States Patent No. 5,517,046, entitled *High Voltage Lateral DMOS Device With Enhanced Drift Region* (the "'046 Patent").  MPS, under Hsing's direction and control, uses the structure claimed in the '046 Patent and infringes the '046 Patent.

25.     While employed at Micrel, Hsing co-invented a process that is the subject of United States Patent No. 5,556,796, entitled *Self-Alignment Technique For Forming Junction Isolation And Wells* (the "'796 Patent").  MPS, under Hsing's direction and control, uses the method claimed in the '796 Patent and infringes the '796 Patent.

26.     Upon resigning his position at Micrel, Hsing signed Micrel's Termination Certification on or about August 14, 1997 ("Hsing Certification") (a true and correct copy of the Hsing Certification is attached as Exhibit 2 to this Amended Complaint).

27.     In the Hsing Certification, Hsing agreed that he would continue to comply with the Hsing Agreement by preserving as "confidential all trade secrets, confidential knowledge, data or other proprietary information relating to products, processes, know-how, designs, formulas, developmental or experimental work, computer programs, data bases, other original works of authorship, customer lists, business plans, financial information or other subject matter pertaining to any business of [Micrel] or any of its clients, consultants or licensees."

28. Upon resigning from Micrel, Hsing completed Micrel's Exit Interview Questionnaire on or about August 14, 1997 ("Hsing Questionnaire") (a true and correct copy of the Hsing Questionnaire is attached as Exhibit 3 to this Amended Complaint).

29. In the Hsing Questionnaire, Hsing indicated that he was resigning his position with Micrel so that he could return to school to complete his Ph.D. thesis in Electrical Engineering and to attend the University of Florida's MBA program.

30. On information and belief, Hsing did not intend to return to school after resigning his position with Micrel and, instead, intended to form MPS.

### Moyer's Employment by and Agreements with Micrel

31. Micrel employed Moyer as a design engineer beginning on approximately July 19, 1990.

32. Moyer signed Micrel's Proprietary Invention and Confidential Information Agreement on or about July 19, 1990 ("Moyer Agreement") (a true and correct copy of the Moyer Agreement is attached as Exhibit 5 to this Amended Complaint).

33. In the Moyer Agreement, Moyer agreed that he would "preserve as confidential and [would] not divulge…or use for any unauthorized purposes either during or after the term of employment, any trade secret, information, matter or thing, of confidential, private or secret nature, connected with the actual or anticipated products, research development or business of [Micrel] without written consent…until such time as such information otherwise becomes public knowledge."

34. While employed at Micrel, Moyer co-invented the structure that is the subject of Micrel's '046 Patent. MPS, under Moyer's direction and control, uses the structure claimed in the '046 Patent and infringes the '046 Patent.

35. On or about August 18, 1997 Moyer stated his intention to retire in a Memorandum to Larry Sample (a true and correct copy of the Memorandum is attached as Exhibit 4 to this Amended Complaint).

36. Moyer retired from Micrel effective on or about September 12, 1997.

37. Upon retiring from Micrel, Moyer signed Micrel's Termination Certification on or about September 12, 1997 ("Moyer Certification") (a true and correct copy of the Moyer Certification is attached as Exhibit 6 to this Amended Complaint).

38. In the Moyer Certification, Moyer agreed that he would continue to comply with the Moyer Agreement by preserving as "confidential all trade secrets, confidential knowledge, data or other proprietary information relating to products, processes, know-how, designs, formulas, developmental or experimental work, computer programs, data bases, other original works of authorship, customer lists, business plans, financial information or other subject matter pertaining to any business of [Micrel] or any of its clients, consultants or licensees."

39. Upon retiring from Micrel, Moyer completed Micrel's Exit Interview Questionnaire on or about September 12, 1997 ("Moyer Questionnaire") (a true and correct copy of the Moyer Questionnaire is attached as Exhibit 7 to this Amended Complaint).

40. In the Moyer Questionnaire, Moyer again indicated that he was retiring.

41. On information and belief, Moyer did not intend to retire; instead, Moyer intended to join MPS. In September 1997, within weeks after leaving Micrel, Moyer joined MPS. Moyer is currently MPS's Chief Design Engineer.

**Defendants Stole and are Using Micrel's Trade Secrets**

**and Proprietary Information**

42. While employed at Micrel, Hsing developed a fabrication process for merging different transistors, such as CMOS, bipolar CMOS (BiCMOS), and DMOS transistors, all onto the same integrated circuit chip with a minimum of fabrication steps. Hsing prepared an invention disclosure relating to this invention. Micrel elected not to file a patent application based on this invention, and the invention remained a trade secret of Micrel.

43. MPS filed a Form S-1 Registration Statement with the Securities Exchange Commission. The S-1 states that while typical foundry processes offer standard CMOS

and BiCMOS transistors, MPS has "developed a single unified fabrication process that can implement many additional types of semiconductor devices on the same [integrated circuit], including higher voltage transistors,…high powered DMOS, and many other varieties of transistors and other semiconductor devices."

44.     On information and belief, Hsing shared the information he developed at Micrel on fabrication processes for multi-transistor integrated circuits with MPS.

45.     On information and belief, MPS used Micrel's proprietary and confidential information relating to fabrication processes for multi-transistor integrated circuits in developing MPS's own methods for fabricating multi-transistor integrated circuits.

46.     While employed at Micrel, Moyer worked on a project testing the feasibility of Micrel producing electro-luminescent lamp drivers (ELLDs) for applications such as lighting watch faces or liquid crystal displays (LCDs) in cellular phones, personal digital assistants (PDAs), digital cameras, and other handheld, portable devices.

47.     While researching ELLDs at Micrel, Moyer developed an idea for driving a lamp at resonance with a series inductor in order to provide a more efficient design than an H-bridge circuit having non-reactive devices.

48.     While researching ELLDs at Micrel, Moyer also developed a signal detector that identifies when a signal reaches a predetermined threshold for use in the control of lamp driver circuitry.

49.     On information and belief, Moyer shared the information he developed at Micrel on ELLDs with MPS.

50.     On information and belief, MPS used Micrel's confidential, proprietary information relating to ELLDs to develop MPS's line of cold cathode fluorescent lamp (CCFL) driver devices.  CCFL drivers are DC to AC inverters, like ELLDs, and perform a similar function in providing backlighting for portable displays.

51.     On information and belief, Micrel's confidential, proprietary information relating to ELLDs is incorporated in the invention claimed in United States Patent

6,114,814, entitled *Apparatus For Controlling A Discharge Lamp In A Backlighted Display*.

52.     While employed at Micrel, Hsing also worked on developing "spacers" for use with lateral double diffused metal oxide semiconductor (LDMOS) transistors.

53.     On information and belief, Hsing shared the information he developed at Micrel relating to spacers with MPS.

54.     On information and belief, Micrel's confidential, proprietary information relating to spacers is incorporated in the invention claimed in United States Patent 6,252,278 ("the '278 Patent), entitled *Self-Aligned Lateral DMOS With Spacer Drift Region*.

55.     Micrel employed Moyer's daughter, Cynthia Moyer ("Ms. Moyer"), as a layout engineer from November 1, 1995 until Ms. Moyer resigned from Micrel on January 22, 1999.

56.     Sometime during her employment at Micrel, Ms. Moyer expressed a desire to work at home.

57.     To avoid losing Ms. Moyer's services, Micrel agreed to allow Ms. Moyer to work at home.

58.     Ms. Moyer worked from home for approximately the last six months of her employment with Micrel.

59.     During the last six months of her employment with Micrel, Ms. Moyer regularly brought Micrel's proprietary information to her home.

60.     During the last six months of her employment with Micrel, Ms. Moyer's father was already employed at MPS.

61.     Upon resigning her position at Micrel in January 1999, Ms. Moyer accepted employment with her father at MPS.

62.     Upon information and belief, Moyer, and subsequently MPS, gained further knowledge of Micrel's ongoing development efforts through the proprietary information that Ms. Moyer worked on at home.

1    63.    Since MPS's formation in 1997, MPS has repeatedly raided circuit design,

2    layout and process engineers from Micrel, and fifteen former Micrel engineers have

3    resigned from Micrel to move to MPS.

4                              **FIRST CLAIM FOR RELIEF**

5                              **PATENT INFRINGEMENT**

6    64.    Micrel repeats and realleges each and every allegation in the paragraphs

7    above, and incorporates them by reference as if fully set forth herein.

8    65.    Micrel is the owner of United States Patent No. 5,517,046 entitled *High*

9    *Voltage Lateral DMOS Device With Enhanced Drift Region* ("the '046 Patent").   The

10   United States Patent & Trademark Office duly and legally issued the '046 Patent on May

11   14, 1996.   A true and correct copy of the '046 Patent is attached as Exhibit 8 to this

12   Amended Complaint.

13   66.    The '046 Patent names the following inventors: Michael R. Hsing, Martin E.

14   Garnett, James C. Moyer, Martin J. Alter, and Helmuth R. Litfin.

15   67.    MPS has knowledge of the '046 Patent by virtue of the fact that three of the

16   inventors named on the '046 Patent, Michael R. Hsing, Martin E. Garnett, and James C.

17   Moyer, are currently MPS employees.   Michael R. Hsing is the President and Chief

18   Executive Officer of MPS and James C. Moyer is MPS's Chief Design Engineer and

19   Director.

20   68.    MPS is precluded from challenging the validity of the '046 Patent under the

21   doctrine of assignor estoppel.

22   69.    MPS has been and is directly infringing the '046 Patent, contributorily

23   infringing the '046 Patent, and inducing infringement of the '046 Patent, by making,

24   using, selling, offering for sale, and/or importing products that are covered by the '046

25   Patent.

26   70.    MPS's infringing actions were and are without the consent or other

27   authority of Micrel.   MPS does not now possess and has never possessed a license under

28   the '046 Patent.

FIRST AMENDED COMPLAINT                        10
CASE NO. C 04-04770 EMC

71.     Micrel has suffered damages as a result of MPS's infringement of the '046 Patent.

72.     MPS's infringing conduct has been, and is, willful and malicious.

73.     MPS will continue to infringe the '046 Patent unless enjoined by the this Court.

74.     This case is exceptional and, accordingly, Micrel is entitled to its costs, expenses, and disbursements in this action, including attorney's fees, pursuant to 35 U.S.C. § 285.

## SECOND CLAIM FOR RELIEF
## PATENT INFRINGEMENT

75.     Micrel repeats and realleges each and every allegation in the paragraphs above, and incorporates them by reference as if fully set forth herein.

76.     Micrel is the owner of United States Patent No. 5,556,796, entitled *Self-Alignment Technique For Forming Junction Isolation And Wells* ("the '796 Patent"). The United States Patent & Trademark Office duly and legally issued the '796 Patent on September 17, 1996.  A true and correct copy of the '796 Patent is attached as Exhibit 9 to this Amended Complaint.

77.     The '796 Patent names the following inventors: Michael R. Hsing and Martin E. Garnett.

78.     MPS has knowledge of the '796 Patent by virtue of the fact that both of the inventors named on the '796 Patent, Michael R. Hsing and Martin E. Garnett, are currently MPS employees.  Michael R. Hsing is the President and Chief Executive Officer of MPS.

79.     MPS is precluded from challenging the validity of the '796 Patent under the doctrine of assignor estoppel.

80.     MPS has been and is directly infringing the '796 Patent, contributorily infringing the '796 Patent, and inducing infringement of the '796 Patent, by making,

using, selling, offering for sale, and/or importing products that are covered by the '796 Patent.

81.    MPS's infringing actions were and are without the consent or other authority of Micrel.  MPS does not now possess and has never possessed a license under the '796 Patent.

82.    Micrel has suffered damages as a result of MPS's infringement of the '796 Patent.

83.    MPS's infringing conduct has been, and is, willful and malicious.

84.    MPS will continue to infringe the '796 Patent unless enjoined by the this Court.

85.    This case is exceptional and, accordingly, Micrel is entitled to its costs, expenses, and disbursements in this action, including attorney's fees, pursuant to 35 U.S.C. § 285.

## THIRD CLAIM FOR RELIEF
## MISAPPROPRIATION OF TRADE SECRETS
(California Civil Code § 3426)

86.    Micrel repeats and realleges each and every allegation in the paragraphs above, and incorporates them by reference as if fully set forth herein.

87.    Micrel's trade secrets include research and development information relating to ELLDs, spacers on LDMOS structures, fabrication processes for multi-transistor integrated circuits, and other techniques for generating integrated circuits.

88.    Micrel's trade secret information was or is not generally known to the public or to other persons who can or could obtain economic value from its disclosure or use. This information is the subject of reasonable efforts by Micrel to maintain its secrecy and derives independent economic value from not being generally known.  The information constitutes "trade secrets" under Cal. Civ. Code § 3426.1(d).

FIRST AMENDED COMPLAINT
CASE NO. C 04-04770 EMC

89.     Hsing willfully and maliciously appropriated Micrel's trade secrets through improper means by sharing Micrel's confidential, proprietary information with other parties in violation of the Hsing Agreement and the Hsing Certification.

90.     Moyer willfully and maliciously appropriated Micrel's trade secrets through improper means by sharing Micrel's confidential, proprietary information with other parties in violation of the Moyer Agreement and the Moyer Certification.

91.     MPS willfully and maliciously appropriated Micrel's trade secrets through improper means by taking the confidential, proprietary information that Hsing and Moyer had regarding Micrel's projects and incorporating that information into MPS's own development program.   MPS knew or should have known that Hsing and Moyer had obligations to preserve the confidentiality of such trade secrets as a result of the Hsing Agreement, the Moyer Agreement, the Hsing Certification, and the Moyer Certification.

92.     Defendants have used Micrel's trade secret information without Micrel's express or implied consent and knowing that the information was acquired by improper means.  Accordingly, Defendants have willfully and maliciously misappropriated Micrel's trade secrets in violation of California's Uniform Trade Secrets Act (Cal. Civ. Code § 3426).

93.     Defendants have unfairly improved their competitive position by misappropriating Micrel's trade secret, confidential, and proprietary information at little or no cost to themselves.   By reason of the above-alleged acts and conduct of the Defendants, Micrel has been damaged and will suffer irreparable harm and damage.

94.     Because of the above-alleged acts and conduct of the Defendants, Micrel is entitled to recover its actual damages and the Defendants' unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss.  If damages are not provable, Micrel is entitled to payment of a reasonable royalty.  Because Defendants' acts of misappropriation were both willful and malicious, Micrel is further entitled to an award of exemplary damages and reasonable attorney's fees.

95.     Micrel is without an adequate remedy at law.  Micrel, therefore, is entitled to an injunction under Cal. Civ. Code § 3426.2, restraining Defendants, their agents, employees, and all persons acting in concert with them, from using, copying, publishing, disclosing, transferring, importing, or selling Micrel's trade secret or other confidential, proprietary information, or any product or services based on or incorporating all or part of Micrel's trade secret or confidential, proprietary information, and restraining them from obtaining any commercial advantage or unjust enrichment from the misappropriation of Micrel's trade secret, confidential, and proprietary information.

96.     In the interests of justice, Micrel is further entitled to an order requiring Defendants, their agents, employees, and all persons acting in concert with them, to return to Micrel any and all of its trade secret, confidential, and proprietary information, including but not limited to any and all materials created, incorporating, or referencing Micrel's trade secret, confidential, and proprietary information.

**FOURTH CLAIM FOR RELIEF**

**COMMON LAW MISAPPROPRIATION**

97.     Micrel repeats and realleges each and every allegation in the paragraphs above, and incorporates them by reference as if fully set forth herein.

98.     Micrel owns the trade secrets and confidential, proprietary information misappropriated by Defendants.  Micrel invested substantial time and money in developing the confidential and proprietary business information at issue in this Complaint.  By misappropriating Micrel's intellectual and physical property without authorization as described above, Defendants have gained a competitive advantage over Micrel.  Defendants misappropriated Micrel's trade secrets and confidential, proprietary information at little or no cost to themselves.

99.     By reason of the above-alleged acts and conduct of Defendants, Micrel has suffered damage, and it will suffer great and irreparable harm and damage.  This irreparable harm will be difficult to ascertain, and Micrel will be without an adequate remedy at law.

100.    Because Micrel is without an adequate remedy at law, Micrel is entitled to an injunction restraining Defendants, as well as their officers, agents, employees, and all persons acting in concert with it, from using, copying, publishing, disclosing, transferring, importing, or selling Micrel's trade secrets or other confidential, proprietary information, or any product that is based on or incorporates part or all of Micrel's trade secrets or confidential, proprietary information, and from obtaining any commercial advantage or unjust enrichment from its misappropriation of Micrel's trade secret, confidential, and proprietary information.

101.    Micrel is further entitled to recover from Defendants for the actual damages sustained by Micrel as a result of Defendants' wrongful acts described in the Complaint. The amount of such damages cannot be determined at this time.   Because Defendants acted with oppression, malice, and fraud, Micrel is entitled to an award of punitive damages and attorneys fees against Defendants.   Micrel is further entitled to recover from Defendants the gains, profits, advantages, and unjust enrichment that it has obtained as a result of its wrongful acts as described herein.   Micrel is at present unable to ascertain the full extent of these gains, profits, advantages and unjust enrichment.

**FIFTH CLAIM FOR RELIEF**

**BREACH OF CONFIDENTIALITY AGREEMENT**

(Against Michael R. Hsing and James C. Moyer)

102.    Micrel realleges each and every allegation set forth in the paragraphs above, and incorporates them herein by reference.

103.    When hired by Micrel, Hsing and Moyer each executed a Proprietary Invention and Confidential Information Agreement Confidentiality Agreement, in which each of the foregoing defendants agreed to keep, to hold in trust, keep confidential, and not disclose to any third party or make any use of any of Micrel's trade secrets or other confidential information.

104.    On information and belief, Hsing and Moyer have breached their contractual obligations to Micrel and have breached the Hsing Agreement and the Moyer Agreement,

1   respectively.   These breaches include improperly removing from Micrel's business

2   premises and misusing, or conspiring and preparing to remove and misuse, materials

3   constituting Micrel's trade secrets and other confidential, proprietary information.  These

4   breaches also include soliciting Micrel's employees to terminate their employment with

5   Micrel.

6       105.   By reason of the above-alleged acts and conduct of Hsing and Moyer in

7   breach of the Hsing Agreement and the Moyer Agreement, respectively, Micrel has

8   suffered damage, and it will suffer irreparable harm and damage.  This irreparable harm

9   will be difficult to ascertain, and Micrel will be without an adequate remedy at law.

10      106.   Because Micrel is without an adequate remedy at law, Micrel is entitled to

11   an injunction restraining Defendants, as well as their officers, agents, employees, and all

12   persons acting in concert with them, from using, copying, publishing, disclosing,

13   transferring, importing, or selling Micrel's trade secrets or other confidential, proprietary

14   information, or any product that is based on or incorporates part or all of Micrel's trade

15   secrets or confidential, proprietary information, and from obtaining any commercial

16   advantage or unjust enrichment from its misappropriation of Micrel's confidential and

17   proprietary information.

18      107.   Micrel is further entitled to recover from Defendants for the actual damages

19   sustained by Micrel as a result of Defendants' wrongful acts described in the Complaint.

20   The amount of such damages cannot be determined at this time.  Micrel is further entitled

21   to recover from Defendants the gains, profits, advantages, and unjust enrichment that it

22   has obtained as a result of its wrongful acts as described herein.  Micrel is at present

23   unable to ascertain the full extent of these gains, profits, advantages and unjust

24   enrichment.

25

26

27

28

## SIXTH CLAIM FOR RELIEF
## STATUTORY UNFAIR COMPETITION

(California Business and Professions Code §§ 17200-09)

108.   Micrel realleges each and every allegation set forth in the paragraphs above, and incorporates them herein by reference.

109.   By the acts alleged in the preceding paragraphs, Defendants have committed business acts and practices that are unlawful and unfair in violation of California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-09.

110.   Defendants' business acts and practices are unlawful and violate the UCL because Defendants unlawfully misappropriated and converted Micrel's trade secrets and confidential and proprietary information, and unlawfully converted Micrel's property. Defendants' business acts and practices violate California laws, including, but not limited to, Cal. Civ. Code §§ 3426.

111.   Defendants' business acts and practices are unfair and violate the UCL because Defendants' acts are illegal and impair fair and honest competition and otherwise significantly harm competition in the market for Micrel's semiconductors.

112.   Defendants may use and/or publish Micrel's trade secrets and confidential and proprietary business information, unless enjoined by this Court.

113.   By reason of the alleged acts and conduct of Defendants, Micrel has suffered and will imminently suffer further harm, including the loss of proprietary information and competitive position, the amount of which will be difficult to ascertain. Micrel will be without an adequate remedy at law.

114.   Because Micrel is without an adequate remedy at law, Micrel is entitled to an injunction restraining the Defendants and their officers, agents, employees, and all persons acting in concert with it, from using, copying, publishing, disclosing, transferring, importing, or selling Micrel's trade secrets or confidential, proprietary information, or any product that is based on or incorporates part or all of Micrel's trade secrets or confidential, proprietary information, and from obtaining any commercial advantage or unjust

FIRST AMENDED COMPLAINT
CASE NO. C 04-04770 EMC

enrichment from its misappropriation of Micrel's confidential and proprietary information.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Micrel hereby requests that this Court:

(1)     Render judgment declaring that MPS has directly infringed the '046 Patent, contributorily infringed the '046 Patent, and/or induced infringement of the '046 Patent;

(2)     Render judgment declaring that MPS has directly infringed the '796 Patent, contributorily infringed the '796 Patent, and/or induced infringement of the '796 Patent;

(3)     Enter preliminary and permanent injunctions restraining and enjoining MPS from further infringement of the '046 Patent;

(4)     Enter preliminary and permanent injunctions restraining and enjoining MPS from further infringement of the '796 Patent;

(5)     Award Micrel damages attributable to MPS's infringement of the '046 Patent and/or '796 Patent;

(6)     Award Micrel treble damages pursuant to 35 U.S.C. § 284, as a result of MPS's wanton, deliberate, malicious, and willful conduct;

(7)     Award Micrel its fees and costs, including attorney's fees, pursuant to 35 U.S.C. § 285;

(8)     Enter preliminary and permanent injunctions ordering that:

a.     all Defendants and all others acting in concert or privity with them, be enjoined from using, copying, publishing, disclosing, transferring, importing, selling or otherwise distributing, directly or indirectly, any of Micrel's trade secret, confidential, and proprietary information, by (i) selling any product incorporating or derived from all or part of Micrel's trade secret, confidential, and proprietary information; (ii) selling or licensing such information to any third party; (iii) providing any good or service that incorporates such information to any third party; or (iv) any other means; and

b. all Defendants return any of Micrel's trade secret, confidential, and proprietary information still retained by the Defendants; and

c. Defendants be required to account for all gains, profits, and advantages derived from its acts of misappropriation and other violations of law; and

d. all gains, profits and advantages derived by Defendants from acts of misappropriation and other violations of law be deemed to be in constructive trust for the benefit of Micrel.

(9) Award Micrel compensatory damages, unjust enrichment, or royalties stemming from Defendants' misappropriation of trade secrets pursuant to Cal. Civ. Code § 3426.3;

(10) Award Micrel double damages pursuant to Cal. Civ. Code § 3426.3, as a result of Defendants' willful and malicious misappropriation of trade secrets;

(11) Award Micrel its attorney fees pursuant to Cal. Civ. Code § 3426.4;

(12) Award Micrel restitution, unjust enrichment, and compensatory damages according to proof at trial;

(13) Award Micrel statutory exemplary damages and punitive damages according to proof at trial;

(14) Award Micrel attorneys fees and costs of suit herein incurred; and

(15) Award Micrel such other and further relief as the Court may deem proper.

Dated: November 29, 2004           O'MELVENY & MYERS LLP


By:  /S/
           Mark E. Miller

Attorneys for Plaintiff
MICREL, INCORPORATED

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEMAND FOR JURY TRIAL**

Micrel demands a trial by jury of all issues triable by a jury pursuant to Federal Rule of Civil Procedure 38 and Civil L.R. 3-6(a).

Dated: November 29, 2004          O'MELVENY & MYERS LLP


By: /S/
          Mark E. Miller

Attorneys for Plaintiff
MICREL, INCORPORATED


**CERTIFICATION OF INTERESTED ENTITIES OR PARTIES**

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

Dated: November 29, 2004          O'MELVENY & MYERS LLP


By: /S/
          Mark E. Miller

Attorneys for Plaintiff
MICREL, INCORPORATED

SF1:567431.11

FIRST AMENDED COMPLAINT
CASE NO. C 04-04770 EMC

20