**United States District Court**

For the Northern District of California

1

2

3 <u>**NOT FOR CITATION**</u>

4

5

6

7 IN THE UNITED STATES DISTRICT COURT

8 FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10 MICREL INC., a California corporation,

11       Plaintiff,                 No. C 04-04770 JSW

12   v.

13 MONOLITHIC POWER SYSTEMS, INC., a      **ORDER GRANTING IN PART**
Delaware corporation, MICHAEL R. HSING,     **AND DENYING IN PART**
14 JAMES C. MOYER, and DOES 1-20 inclusive,    **DEFENDANTS' MOTION TO**
                                          **DISMISS STATE LAW CLAIMS**
15       Defendants.                **IN SECOND AMENDED**
                                          **COMPLAINT**
16                                       /

17

18                                **I. INTRODUCTION**

19      This matter comes before the Court upon consideration of the motion to dismiss filed by

20 defendants Monolithic Power Systems, Inc. ("MPS"), Michael R. Hsing ("Hsing"), and James

21 C. Moyer ("Moyer") (collectively "Defendants").  Having considered the parties' pleadings, the

22 relevant legal authority, and having had the benefit of oral argument, the Court GRANTS IN

23 PART AND DENIES IN PART Defendants' motion.

24                         **II. PROCEDURAL BACKGROUND**

25      On November 10, 2004, Micrel filed a complaint against MPS alleging infringement of

26 two of Micrel's patents.  On November 29, 2004, Micrel filed a First Amended Complaint

27 ("FAC"), again alleging two counts of patent infringement, adding Hsing and Moyer as

28 defendants, and adding claims for misappropriation of trade secrets pursuant to California's

Uniform Trade Secrets Act, Civil Code §§ 3426 *et seq.* (hereinafter "CUTSA"), common law

misappropriation, breach of confidentiality agreements, and violations of California Business and Professions Code Section 17200 ("Section 17200").

Defendants initially moved to dismiss each of the state law causes of action in the FAC on the ground that each of those claims was barred by the applicable statutes of limitations. The Court granted Defendants' motion on this ground, but provided Micrel leave to amend to allege facts demonstrating that the discovery rule applied.

Micrel filed a Second Amended Complaint ("SAC") on May 2, 2005 and Defendants now move again to dismiss Micrel's state law claims based on statute of limitations grounds.

### III.  FACTUAL BACKGROUND

In the SAC, as in the FAC, Micrel alleges that Moyer was a design engineer and Hsing was a process development engineer at Micrel. (SAC ¶¶ 18, 30.) While working at Micrel, Hsing and Moyer co-invented a structure that was patented in United States Patent No. 5,571,046 (the "'046 Patent"). (*Id.*, ¶¶ 23, 33.) Hsing also co-invented a process that is the subject of United States Patent No. 5,556,796 (the "'796 Patent"). (*Id.*, ¶ 24.)

When Hsing and Moyer joined Micrel, both signed proprietary invention and confidentiality agreements with Micrel, stating that each agreed to preserve Micrel's trade secrets and research during and after employment with Micrel. (*Id.*, ¶¶ 21–22, 31–32.) Upon leaving Micrel, both Hsing and Moyer signed termination certificates stating that each agreed to continue to comply with the confidentiality agreements and preserve Micrel's trade secrets, confidential data, and research. (*Id.*, ¶¶ 25–26, 36–37.)

Micrel alleges that Moyer and Hsing left Micrel under false pretenses in 1997 and formed MPS. (*Id.*, ¶¶ 18–19, 28–29, 35, 39–40.) While at Micrel, Moyer researched electro-luminescent lamp drivers ("ELLDs"). (*Id.*, ¶¶ 45–47.) Moyer shared the information on ELLDs with MPS, helping to develop MPS's line of cold cathode fluorescent lamp ("CCFL") driver devices. (*Id.*, ¶¶ 48–50.) Moyer's work on ELLDs is incorporated in the invention claimed in United States Patent No. 6,114,814 (the "'814 Patent"). (*Id.*, ¶ 50.) Both ELLDs and CCFLs are DC to AC inverters that perform similar functions in providing backlighting for portable displays. (*Id.*, ¶ 49.)

United States District Court

For the Northern District of California

1   Hsing worked on developing "spacers" for use with lateral double diffused metal oxide

2   semiconductor ("LDMOS") transistors while at Micrel.  (*Id.*)  Micrel alleges that Hsing shared

3   the information he developed on spacers with MPS, and that the spacer information was

4   incorporated in the invention claimed in United States Patent No. 6,252,278 (the "'278 Patent").

5   (*Id.*, ¶¶ 51–53.)

6   Micrel alleges that Moyer's daughter, Cynthia Moyer ("Ms. Moyer"), brought Micrel's

7   confidential information home with her during the last six months of her employment with

8   Micrel.  (*Id.*, ¶¶ 54, 58.)  During the time that Ms. Moyer brought confidential information home

9   with her, Moyer was already working at MPS.  (*Id.*, ¶ 59.)  Ms. Moyer left Micrel to work at

10  MPS in January 1999.  (*Id.*, ¶ 60.)  Moyer and MPS gained knowledge of Micrel's development

11  efforts through the proprietary information that Ms. Moyer worked on at home.  (*Id.*, ¶ 61.)

12  Micrel alleges it first learned of the '814 and '278 Patents on or about May 13, 2003,

13  when a Micrel employee, Martin Garnett, was deposed in the case *O2 Micro Int'l Ltd. v.*

14  *Monolithic Power System Inc.*, No. CV-00-4071 and CV-01-3995 (the "O2 Micro Action").

15  (*Id.*, ¶¶ 62–64.)  In the O2 Micro Action, MPS asserts that O2 Micro Int'l Ltd. ("O2 Micro")

16  infringed the '814 Patent.  (*Id.*, ¶ 62.)  Micrel is not a party to the O2 Micro Action.  (*Id.*)

17  In February 2004, O2 Micro indicated that Moyer may have conceived of the inventions

18  claimed in the '814 Patent while working at Micrel.  (*Id.*)  O2 Micro repeated this suggestion to

19  Micrel in August 2004 and requested a license under Micrel's rights in the '814 Patent.  (*Id.*)

20  Based on O2 Micro's suggestions, Micrel began to review Moyer's files, files that had been

21  placed in storage when Moyer left Micrel in 1997.  (*Id.*, ¶ 66.)

22  Micrel alleges it did not learn of the alleged misappropriations by Defendants until late

23  October or early November 2004, when Micrel discovered documents that indicated that Moyer

24  conceived the inventions contained within the '814 Patent while working at Micrel.  (*Id.*, ¶¶ 1,

25  67.)  Micrel alleges that after it discovered Moyer's alleged misappropriation, Micrel uncovered

26  additional misappropriations of trade secrets and confidential information by Defendants.  (*Id.*, ¶

27  68.)

28

3

**United States District Court**

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# IV. ANALYSIS

### A.     Legal Standards Applicable to Motions to Dismiss.

A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss should not be granted unless it appears beyond a doubt that a plaintiff can show no set of facts supporting his or her claim.  *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957); *see also De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978).  The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true.  *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986).

### B.     The Discovery Rule

Defendants argue that Micrel's state law claims are barred because the applicable statutes of limitations have run and that Micrel has not plead sufficient facts to invoke the discovery rule.  Based on Micrel's allegations that Hsing and Moyer disclosed and misappropriated Micrel's trade secrets and confidential information relating to, inter alia, ELLDs and spacers on LDMOS structures, Micrel asserts state law claims for misappropriation of trade secrets under the CUTSA, common law misappropriation, breach of confidentiality agreements, and violations of Section 17200.  The statutes of limitations of Micrel's state law claims range from between two and four years.  *See* Cal. Civ. Code § 3426.6 (CUTSA claim must be brought within three years); Cal. Code Civ. P. § 339; *Monolith Portland Midwest Co. v. Kaiser Alum. & Chem. Corp.*, 407 F.2d 288 (9th Cir. 1969) (common law misappropriation claims must be brought within two years); Cal. Code Civ. P. § 337 (claims based on written contract must be brought within four years); Cal. Bus. & Prof. Code § 17208 (Section 17200 claims must be brought within four years).

Generally, a plaintiff must bring a cause of action within the applicable limitations period.  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005); *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999).  The discovery rule is an exception to the general rule.  The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action."  *Fox*, 35 Cal. 4th at 807.  "A plaintiff has reason to discover a

**United States District Court**

**For the Northern District of California**

1    cause of action when he or she 'has reason at least to suspect a factual basis for its elements.'"

2    *Id.*, citing *Norgart*, 21 Cal. 4th at 398.

3         Under the discovery rule, accrual of a cause of action is delayed only "until the plaintiff

4    has, or should have, inquiry notice of the cause of action." *Id.*  Where the discovery rule

5    applies, the statute of limitations for the cause of action is "tolled until such time as a reasonable

6    investigation would have revealed its factual basis." *Id.* at 803.  Where a plaintiff relies on the

7    discovery rule, the plaintiff "must specifically plead facts to show (1) the time and manner of

8    discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Id.*

9    at 808, citing *McKelvey v. Boeing North American, Inc.*, 74 Cal. App. 4th 151, 160 (1999)

10   (emphasis in original).  Under the discovery rule, "[s]ubjective suspicion is not required.  If a

11   person becomes aware of facts which would make a reasonably prudent person suspicious, he or

12   she has a duty to investigate further and is charged with knowledge of matters which would

13   have been revealed by such an investigation." *Mangini v. Aerojet-General Corp.*, 230 Cal. App.

14   3d 1125 (1991).

15        Pursuant to the discovery rule Micrel's state law claims would begin accruing either

16   when Micrel actually discovered or had reason to discover the factual basis of its claims.  O2

17   Micro deposed Micrel's employee, Martin Garnett, on May 13, 2003.  (SAC ¶ 63.)  Micrel

18   alleges it first learned of the '814 and '278 Patents at this deposition.  After O2 Micro suggested

19   that Moyer conceived of the inventions claimed in the '814 Patent while he was still working at

20   Micrel, Micrel conducted an investigation.  According to Micrel, it did not discover the alleged

21   misappropriations relating to the '814 Patent until October or November of 2004.  Micrel then

22   conducted further investigations and discovered additional misappropriations by Defendants.

23   (SAC ¶¶ 64-68.)  Thus, Micrel alleges that it did not obtain actual notice of any of its state law

24   claims until October 2004 at the earliest, which is well within the statute of limitations period

25   for all of its state law claims.  For purposes of the motion to dismiss, the Court must assume

26   Micrel's allegations regarding when it obtained actual notice are true.  Thus, the issue becomes,

27   whether Micrel could have discovered the factual bases for its claims sooner by exercising

28   reasonable diligence.

United States District Court

For the Northern District of California

The issue of when a plaintiff has knowledge of facts which should have put it on notice of its claims is a question of fact which ordinarily may not be resolved on a motion to dismiss. *Acebey v. Shearson Lehman Brothers, Inc.*, 1994 WL 374298, at *7, Fed. Sec. L. Rep. P. 98, 301 (C.D. Cal. June 4, 1994) ("It will be a rare case where the complaint alone contains sufficient allegations to resolve the issue of constructive notice as a matter of law."). Here, Micrel alleges that Moyer and Hsing both left under false pretenses. Moyer said he was leaving because he wanted to retire and Hsing said he was leaving to attend graduate school. Micrel later discovered that they both left Micrel in order to work at MPS. (SAC ¶¶ 29, 40.) Although Micrel may have had information that Moyer and Hsing were not entirely honest when they left, there are reasons other than hiding misappropriations why employees may not want to disclose to their employers that they are leaving to go work for a competitor. Standing alone, the alleged fact that Moyer and Hsing left under false pretenses is insufficient to give Micrel reason to suspect them of misappropriating trade secrets and confidential information.

Micrel further alleges that Ms. Moyer had access to and took home Micrel's confidential information during July or August of 1998 through January of 1999, her last six months of working at Micrel. After she left Micrel, Ms. Moyer immediately starting working at MPS. Micrel alleges upon information and belief that Ms. Moyer shared Micrel's confidential information with Moyer. (SAC ¶¶ 54-61.) Micrel clarified at the hearing on the motion to dismiss that Micrel did not come to this conclusion until late 2004, and has still not confirmed any misconduct by Ms. Moyer. The mere fact that Ms. Moyer had access to Micrel's confidential information and then went to work for at MPS is insufficient to put Micrel on inquiry notice of its state law claims.

Another alleged fact which MPS argues should have put Micrel on notice is that since MPS formed in 1997, thirteen of Micrel's former employers have resigned from Micrel to work at MPS. However, Micrel clarified in its SAC that, until recently, the movement of employees from Micrel to MPS was consistent with trends in the semiconductor manufacturing industry in Silicon Valley. (SAC ¶ 69.) Two employees left in January 1999, three left in the summer of 2000, and only one left between August 2000 and April 2004. Then, between April and October

6

United States District Court

For the Northern District of California

1  of 2004, seven engineers suddenly left Micrel for MPS.  (*Id*.)  Again, the Court must assume

2  Micrel's allegations regarding the trend in the semiconductor manufacturing industry are true

3  for purposes of this motion.  Thus, as long as the number of employees leaving Micrel for MPS

4  was consistent with the trend in the industry, such facts would not put Micrel on inquiry notice

5  of its state law claims.

6        Finally, the Court must address the issuance of the '814 and '278 Patents.  The "issuance

7  of a patent and recordation in the Patent Office constitute notice to the world of its existence."

8  *Wine Ry. Appliance Co. v. Enterprise Ry. Equipment Co.*, 297 U.S. 387, 393 (1936).  The '814

9  Patent was issued on September 5, 2000 and the '278 Patent was issued on June 26, 2001.

10  (Docket No. 16, Exs A, B.)  However, the fact that knowledge of the existence of the '814 and

11  '278 Patents may be imputed to Micrel as of September 2000 and June 2001, respectively, does

12  not necessarily establish as a matter of law that Micrel should have known about the alleged

13  misappropriations by these dates.  *See General Bedding Corp. v. Echevarria*, 947 F.2d 1395

14  (9th Cir. 1991).  "The issuance of a patent gives a plaintiff constructive notice of its claims if the

15  patent reveals information sufficient to alert a reasonable person of the need to inquire further."

16  *International Business Machines Corp. v. Zachariades*, 1993 WL 443409, *2 (N.D. Cal. Oct.

17  27, 1993), *aff'd in part and rev'd in part*, 70 F.3d 1278 (9th Cir. 1995) (citing *Echevarria*, 947

18  F.2d at 1398); *see also Hartley Pen Co. v. Lindy Pen Co.*, 16 F.R.D. 141, 157 (S.D. Cal. 1954)

19  (charging party with presumptive notice of the issuance of a patent sufficient to start accrual of

20  statute of limitations).

21        In *Echevarria*, the plaintiff, General Bedding, manufactured and sold air mattresses

22  between 1974 and 1978.  In 1978, the company authorized its employee, Fred Brandau, to

23  investigate the uses of polyvinyl tubes in waterbeds.  Brandau worked with Angel Echevarria,

24  whose company supplied mattress covers to General Bedding.  In March of 1998, Echevarria

25  applied for a patent for a waterbed design using tubes.  The patent was issued to Echevarria in

26  1980.  In April of 1998, unbeknownst to General Bedding, Brandau and Echevarria entered into

27  a written agreement to give Brandau one-half interest in the invention and the profits derived

28  from it.  *Echevarria*, 947 F.2d at 1396.  General Bedding alleged that while Brandau reported

7

United States District Court

For the Northern District of California

1    back to it that the waterbeds with tubes were not commercially feasible, he secretly agreed with

2    Echevarria that Echevarria should design the patent and that the two of them would split the

3    profits.  In 1988, General Bedding filed claims against Brandau and Echevarria for, *inter alia*,

4    design misappropriation, conversion, and unfair competition.  *Id*.

5            Brandau and Echevarria moved for summary judgment, arguing that General Bedding's

6    claims were barred by the statute of limitations.  The court held that the issuance of the patent

7    was insufficient to demonstrate as a matter of law that General Bedding had constructive

8    knowledge of its claims.  *Id*. at 1398.  The court found it significant that Brandau's name was

9    not on the patent and that Brandau was alleged to be involved in the fraud.  Moreover, it was not

10   necessarily unusual for Echevarria to have patented such a design.  Thus, the court could not

11   conclude, as a matter of law, that a reasonable person would have necessarily investigated when

12   confronted with Echevarria's patent.  *Id*.

13           In *International Business Machines*, while an employee at IBM, Dr. Anagnostis E.

14   Zachariades performed work on ultra-high molecular weight polyethylene ("UPE").

15   Zachariades had agreed in his employment agreement not disclose or appropriate confidential

16   information relating to his work and agreed to assign to IBM all inventions or ideas he

17   conceived of while working there.  *International Business Machines*, 1993 WL 443409, at * 1.

18   While he was still working for IBM, Zachariades applied for and was issued a patent for an

19   invention relating to UPE materials.  Five years after the patent was issued, IBM sued

20   Zachariades for breach of fiduciary duty, fraudulent concealment, and misrepresentation.  The

21   court granted the defendants' motion for summary judgment on the grounds that IBM's claims

22   were time-barred because the issuance of the patent put IBM on constructive notice.  The court

23   reasoned that Zachariades' patent on UPE materials should have aroused IBM's suspicions

24   because the patent covered a subject area on which Zachariades worked while at IBM and was

25   within the scope of IBM's business interests.  *Id*. at *2.

26           The Court finds that the facts here are more analogous to those in *Echevarria* than in

27   *International Business Machines*.  While the '814 Patent named Micrel's former employees as

28   the inventors and was assigned to MPS, a known competitor, Micrel argues that it had no reason

8

United States District Court

For the Northern District of California

to suspect a connection between the subject of the '814 Patent and Micrel's products.  (Opp. at 5.)  The '814 Patent was for CCFL drivers, while Micrel's inventions are ELLDs.  Micrel argues that although the two products perform similar functions, they are not the same product and thus, issuance of the patent was insufficient to put Micrel on notice of the claims against Defendants.  (*Id.*)  Defendants counter that Micrel's argument that the two products are different is factually unsupported and contradicts Micrel's allegations that the two products perform similar functions.  (Reply at 4.)  Whether CCFLs and ELLDs are sufficiently similar that the issuance of a patent relating to CCFL drivers would put Micrel on notice of its claims is a question of fact that the Court cannot resolve on a motion to dismiss.

In contrast, the '278 Patent states that the invention at issue is a modification of a prior art structure of the '046 Patent, which was issued to Micrel.  (Docket No. 16, Ex. B ('278 Patent) at 2:37-38 ("This prior art structure of the '046 Patent has been modified in this present invention.").)  The '278 Patent was assigned to MPS and identified Hsing as the inventor.  *Id.*  Moreover, the '278 Patent states that the application for the patent was filed on May 18, 1998, less than nine months after Hsing left Micrel.  (*Id.*)  When the '278 Patent was issued on June 26, 2001, Micrel was given constructive notice of these facts.  *Wine Ry. Appliance*, 297 U.S. at 393.  The relatively short time period in between Hsing leaving Micrel and filing the application for the '278 Patent, in conjunction with the fact that the '278 Patent specifically states that it is a modification of Micrel's prior invention, should have put a reasonable person on notice that Hsing may have developed or conceived of the invention covered by the '278 Patent while he was still working at Micrel.  When the '278 Patent is considered along with the fact that Micrel knew that Hsing left under false pretenses to form MPS, a competing company, and that Moyer also left Micrel under false pretenses to work for MPS, the Court concludes that Micrel was on notice of its claims by no later than June 26, 2001.

Therefore, the statutes of limitations on Micrel's claims began to run on June 26, 2001.  Micrel did not file this action until November 10, 2004, more than three years later.  Accordingly, Micrel's common law misappropriation claim and CUTSA claim are barred by their respective two and three year statutes of limitations.  On the other hand, the Court cannot

**United States District Court**

For the Northern District of California

1   conclude at this procedural stage that Micrel's claims for breach of confidentiality agreements

2   and violations of Section 17200, both of which have four year statutes of limitations, are time-

3   barred.  Accordingly, the Court grants Defendants' motion to dismiss with respect to Micrel's

4   common law misappropriation claim and CUTSA claim, but denies Defendants' motion with

5   respect to Micrel's claims for breach of confidentiality agreements and violations of Section

6   17200.

7       The Court denies Micrel's request for further leave to amend to more fully explain why

8   the events alleged in its complaint could not have put it on notice of its claims sooner.  Because

9   the Court concludes that the issuance of the '278 Patent gave Micrel notice as matter of law,

10  further allegations regarding the details of what Micrel actually knew would be futile.

11                                    **CONCLUSION**

12      For the foregoing reasons, Defendants' motion to dismiss pursuant to Rule 12(b)(6) is

13  GRANTED IN PART and DENIED IN PART.  The Court GRANTS Defendants' motion as to

14  Micrel's CUTSA and common law misappropriation claims and DENIES Defendants' motion

15  as to Micrel's claims for breach of confidentiality agreements and for violations of Section

16  17200.  The Court DENIES Micrel's request for further leave to amend the dismissed state law

17  claims.

18      **IT IS SO ORDERED.**

19

20  Dated: December 9, 2005

21                                              JEFFREY S. WHITE
                                                UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28